**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

IN RE:   Don Bryce Cozart                                                           No.  5:08-bk-73392
                                                                                                              Ch. 7


Arthur V. Brown and Catherine A. Cushman                                Plaintiffs

vs.                                          5:08-ap-07187

Don Bryce Cozart                                                                       Defendant


**MEMORANDUM OPINION**


On August 26, 2008, the debtor, Don Bryce Cozart [Cozart], filed a voluntary petition for relief under chapter 7 of the bankruptcy code.  On November 5, 2008, the plaintiffs, Arthur V. Brown and Catherine A. Cushman [Brown/Cushman], timely filed a complaint under 11 U.S.C. § 523(a)(2)(A)[1] to determine the dischargeability of a debt owed by the debtor to the plaintiffs in the amount of $545,595.00 relating to the purchase of a residence from Cozart.  The plaintiffs also prayed for modification of the automatic stay under § 362(d) to permit the entry of a judgment of non-dischargeability into the registry of the state court in order to proceed with collection remedies available to them under the law.  On November 18, 2008, the debtor filed an answer to the complaint.  The Court held a trial on the merits on March 5, 2009, at the conclusion of which it took the matter under advisement.  For the reasons stated below, the Court denies the complaint of the plaintiffs and, accordingly, also denies the request to modify the automatic stay.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  The following opinion

---

[1] The plaintiffs initially included additional causes of action under § 523(a)(2)(B) and (a)(6) in their complaint to determine dischargeability.  However, counsel for the plaintiffs withdrew those causes of action prior to the trial.

constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Background (Facts)**

The debtor, Cozart (or Cozart through companies he owned in whole or in part), purchased 76 acres on the east side of Fayetteville, annexed the property, and rezoned it to provide for a large scale residential development consisting of four phases. The subject residential property is located in phase three and the building permit for the property was issued in February 2004. Cozart retained Adam Bailey or Adam Bailey Construction, LLC to construct the residence. The home was substantially completed in November 2005 and on November 22, 2005, an occupancy permit was issued by the City of Fayetteville.

On November 18, 2005, Cozart prepared a "Seller Property Disclosure" consisting of six pages. On the property disclosure, Cozart answered "No" to all of the questions asking whether there were any defects or problems with the premises. Cozart testified that the disclosure was accurate when it was completed. Also included on the property disclosure is a statement that requires the seller to notify the listing agent firm if any of the answers change. On page one, under "Seller's Statement," the property disclosure states: "Seller agrees to notify Listing Agent Firm if any answer set forth below becomes untrue." On page six, in bold letters, the property disclosure states: "SELLER FURTHER AGREES TO NOTIFY IN WRITING BUYERS, LESSEES, TENANTS OR LISTING AGENT FIRM OF ANY CHANGES IN THIS DISCLOSURE WHICH MAY BECOME KNOW TO SELLER AFTER THIS DATE." Finally, the disclosure statement form also states a buyer's caveat in bold letters on the front page: "THIS DISCLOSURE IS NOT A SUBSTITUTE FOR INSPECTIONS. ANY POTENTIAL PURCHASER OF THE PROPERTY IS ENCOURAGED TO OBTAIN A PROFESSIONAL, PERSONAL OR OTHER INSPECTION PRIOR TO PURCHASING, LEASING, EXCHANGING, RENTING OR OFFERING TO PURCHASE THE PROPERTY."

The debtor subsequently ordered a home inspection report from Arkansas HomeTech Inspections, Inc. [HomeTech]. The report was provided to the debtor soon after the inspection was performed by HomeTech on May 3, 2006, approximately three months prior to closing the sale of the home to Brown/Cushman. HomeTech's report referred to several problems throughout the house and suggested corrections or remedial work relating to structural, exterior, roof, attic, plumbing, and HVAC items. Many of the items referred to in the HomeTech report were minimal and not material; however, more serious problems were noted as well, such as deficient floor and attic insulation, incomplete flashing, roofing defects, caulking and water penetration concerns, and other moisture related issues. Cozart received this report detailing problems; however, he did not notify the listing agent firm in writing of any changes in his answers on the Seller Property Disclosure.

On May 28, 2006, Brown/Cushman made an offer to purchase the subject property, subject to some stated conditions. After negotiation, Cozart accepted Brown/Cushman's offer to pay $532,000.00, with a closing date of August 1, 2006. The disclosure statement was attached to the offer and acceptance of May 28, 2006, and available to Brown/Cushman prior to the sale. "Don Cozart" is listed as the seller of the property; however, Covington Custom Homes, Inc., owned the subject property. The Seller Property Disclosure executed by Cozart on November 18, 2005, referred to the seller on the first page as "Covington Custom Homes, LLC," but was signed "Don Cozart, Seller" on the last page.[2]

Prior to the closing, Brown/Cushman hired Amerispec Home Inspection Service [Amerispec] to inspect the house. The inspection was performed on July 20, 2006,

---

[2] Throughout the trial and on numerous documents, Covington Custom Homes was referred to as either Covington Custom Homes, Inc. or Covington Custom Homes, LLC. For the remainder of this opinion, the Court will refer to this entity as Covington Custom Homes. Whether it is a corporation or a limited liability company does not affect the Court's ruling.

3

eleven days before the closing. Like the HomeTech inspection, the Amerispec inspection also revealed potential problems or defects in the structure. The report also contained the following statement:

> The builder advised that he had an inspection done on this house 2 months ago to be used as a guideline for repairs and to be used as a marketing tool to assure future buyer's [sic] that the repairs were done and to avoid last minute surprises. I was also advised that some of the same issues that I noted, were noted in that report. Client was unaware of this inspection report. Client should consider requesting a copy of this marketing inspection report as needed and inquire with the builder as to who made the repairs, what type of repairs were made, where were the prior items in that report disclosed, and for future reference and peace of mind if needed, especially since the builder has made changes to the home requested by the buyer.

As a result of the Amerispec inspection, Brown/Cushman executed an Inspection, Repair and Survey Addendum to their Real Estate Contract of May 28, 2006. The addendum was dated July 21, 2006, and specifically requested Cozart to "provide copy of prior inspection report and evidence of repair of any items noted as punch list conditions in that report." Cozart received the addendum and responded on July 24, 2006, stating, in part in paragraph 3, that "Prior Inspection Report will not be provided - Report was not a full house inspection and was done as a part of the construction process." Brown/Cushman responded on July 25, 2006, stating, "Buyer does not agree to Paragraph 3 of this Inspection, Repair and Survey Addendum."[3] At trial, Cozart testified that he never read the HomeTech report, but claimed he simply obtained it and forwarded it to his attorneys. Brown/Cushman elected to proceed with the closing six days later without requiring a copy of the prior appraisal/inspection report, even though their own inspection informed them of Cozart's prior inspection report performed by HomeTech.

---

[3] The Inspection, Repair and Survey Addendum consists of four pages. However, only the first three pages were introduced as evidence at trial.

On October 11, 2007, Brown/Cushman filed a lawsuit against Cozart in Washington County Circuit Court, in which they prayed for relief under theories of fraud, violation of the Arkansas Deceptive Trade Practices Act, and breach of implied and express warranties. Brown/Cushman alleged that Cozart claimed he was the sole owner of the property and made no reference to its ownership by Covington Custom Homes, and that Cozart said he had experience as a general contractor and homebuilder. They alleged there were egregious construction defects which were known or should have been known by Cozart at the time he agreed to sell the residence to the plaintiffs, that they were material in nature, and were subsequently confirmed by engineers, inspectors, and other recognized experts in the residential construction industry. Brown/Cushman alleged that were it not for the false representations made by Cozart regarding the quality of the residence constructed by Cozart, his experience as a homebuilder, and the absence of any disclosable defects, Brown/Cushman would not have purchased the residence.

Prior to the state court trial of the lawsuit, the parties entered into a settlement agreement and release, the substance of which required rescission of the sale with Cozart to pay to the plaintiffs the sum of $545,595.00 "(net of all costs and expenses related to the closing) on or before the close of business on October 15, 2008." In exchange, the plaintiffs were to execute a warranty deed back to Cozart. If Cozart failed to make the payment as agreed, Brown/Cushman would be entitled to an ex parte entry of a judgment against the debtor, Don Cozart, and Covington Custom Homes in the amount of $545,595.00.[4] The settlement agreement was entered into by the parties on July 17, 2008. The debtor filed for relief under chapter 7 of the bankruptcy code on August 4, 2008, and Brown/Cushman filed this adversary proceeding on November 5, 2008.

---

[4] There was no explanation why the amount to be paid in settlement was slightly greater than the purchase price, but presumably it included the plaintiffs' attorneys' fees or costs related to the matter. In the event Cozart failed to perform his obligation to pay Brown/Cushman $545,595.00, Brown/Cushman were entitled to the immediate entry of a judgment against Cozart and Covington Custom Homes in the amount of $545.595.00.

**Law**

Section 523(a)(2)(A) of the bankruptcy code states that discharge is not available to a debtor for any debt for money, property, or services obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Under § 523(a)(2)(A), to prevail the creditor must prove by a preponderance of the evidence "(1) that the debtor made a representation; (2) that at the time the debtor knew that the representation was false; (3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made." *Merchants Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999)(quoting *In re Ophaug,* 827 F.2d 340 (8th Cir.1987)). Unless there is sufficient proof as to each element, judgment cannot be entered for the creditor.

**Findings of Fact and Conclusions of Law**
      **False Pretenses, False Representation, Actual Fraud**

To satisfy the first two elements under § 523(a)(2)(A), Brown/Cushman need to prove that Cozart made a representation that he knew was false at the time he made the representation. According to the Eighth Circuit Bankruptcy Appellate Panel, a misrepresentation "denotes 'not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth.'" *Moen*, 238 B.R. at 791 (quoting *In re Melancon*, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). This would include silence regarding a material fact. *Id*. Further, in assessing the debtor's knowledge of the falsity, the court must consider the experience of the debtor. In circumstances where a debtor should have known of the falsity, the debtor is acting with reckless disregard for the truth. That is sufficient to satisfy the knowledge requirement. *Id.* (citing *In re Duggan*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

Brown/Cushman identified a number of representations made by Cozart relevant to their complaint.  The first three relate to Cozart's statements regarding (1) the owner of the subject property, (2) the specific builder of the residence, and (3) the quality of the construction.  Relating specifically to these statements only, the Court finds that the statements were not germane to Brown/Cushman's decision to purchase the home.  Mr. Brown testified that Cozart told him that Cozart owned the lots in phase three.  By the time the parties closed the sale, Brown/Cushman had received the Seller Property Disclosure, and Mr. Brown testified he was aware the disclosure listed Covington Custom Homes as the seller of the property.  Brown/Cushman had enough information prior to closing to question who the legal owner was if ownership was an issue.  The Court finds that Cozart used Covington Custom Homes interchangeably with himself in his individual capacity as the owner and seller of this property; knowledge of the legal owner would not have affected the purchase of the property.

Mr. Brown also testified that Cozart told him he built and owned the house personally.  The fact that Cozart may not have personally wielded a hammer or operated machinery during the construction of the house does not mean that he did not "build" the house.  Although Cozart's experience in actual residential construction may have been relatively limited, he had significant experience in oversight and general construction management.  Further, Cozart's construction company, Cozart & Co., Inc., was licensed by the Arkansas Contractors Licensing Board to practice contracting within the "Residential" classification.

Finally, although Cozart may not have been as experienced as he may have led Brown/Cushman to believe, Cozart's statements could be considered to be nothing more than "puffing" or promotion.  Any such statements should not be blindly accepted; a purchaser should generally be skeptical of such statements without independent verification.  Accordingly, the Court finds that Cozart's statements as to his ability as a

"quality builder," and such similar statements, were not false statements sufficient to meet the scienter required under § 523(a)(2)(A).

On the other hand, Cozart did make three other representations that the Court finds were either false at the time the representations were made or Cozart remained silent when disclosure was appropriate. First, Cozart filled out the Seller Property Disclosure on November 18, 2005. He testified that at the time he completed the disclosure, it was accurate. After he received the HomeTech inspection report on May 3, 2006, Cozart had a duty to notify the listing agent of any changes in the disclosure, as stated in two separate places on the Seller Property Disclosure. He did not do this. As an example, Cozart should have amended the report and answered "yes" to questions 9, 18, and 48, and then explained what corrections, if any, were made. Question 9 asks if there has been "any flooding, drainage, grading problems, or has water ever stood on the Property or under any improvement constructed thereon?"; question 18 asks whether "there are any known defects in the mechanical, electrical, plumbing, appliance, heat and air, water, sewer or septic systems of the property?"; and question 48 asks if there is "or has there ever been any past or present water intrusion?" Each of these areas was addressed in the HomeTech report, which indicated potential problems. Even if all the problems noted in the report were corrected, Cozart still had an affirmative duty to amend the Seller Property Disclosure to show that problems had existed and to list the items that remained unrepaired. Such a requirement is for the benefit of potential buyers to determine independently if the corrections and repairs were completed properly.

Second, when testifying about his refusal to provide a copy of the report to Brown/Cushman because it was not a full house inspection, Cozart said he believed the report to which the plaintiffs were referring was perhaps an inspection report performed by the City of Fayetteville, approximately three years earlier. The Court finds this to be a misrepresentation because the HomeTech report was a complete and full home inspection. The Court finds that all parties were aware that the request by Brown/Cushman was a specific request for the HomeTech inspection report that was

ordered and performed approximately three months earlier by and for Cozart. Cozart also testified that he never read the HomeTech report, but claimed he simply obtained it and forwarded it to his attorneys. This is also a misrepresentation and exhibits a reckless disregard for the truth. It is inconceivable that Cozart would not have reviewed the first few pages of the report (the "Summary Report" section) which listed all of the problems. Even if Cozart did not personally review the report, it is unimaginable that he would not have spoken with his foreman or construction supervisor following the report to determine what repairs or corrections should be made and the costs involved. The Court finds that Cozart was, or should have been, aware of the HomeTech report and, generally, its contents at all pertinent times, and that Cozart knew Brown/Cushman were requesting a copy of the HomeTech report, not an earlier inspection report from the City of Fayetteville.[5]

Finally, the Court finds that Cozart created a false pretense when he failed to disclose the material deficiencies needing correction that were documented in the HomeTech report, but not subsequently corrected or repaired. Some of the nondisclosed deficiencies appeared in the Amerispec report. His silence with regard to a material fact is an "'implied misrepresentation or conduct intended to create and foster a false impression.'" *Moen*, 238 B.R. at 791 (quoting *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)).

### Made With the Intention and Purpose of Deceiving

To meet the third element, Brown/Cushman need to prove that Cozart made the representations "deliberately and intentionally with the intention and purpose of deceiving" Brown/Cushman. The intent element associated with § 523(a)(2)(A) requires

---

[5] Cozart also attempted to conceal the existence of this report at a deposition during the state court litigation when he testified that he did not *personally* order an inspection report. His position was that his company, Covington Custom Homes actually ordered the report. Although that may be technically correct, Cozart had referred to Covington Custom Homes and himself interchangeably for other purposes, as previously stated in this opinion and at trial. This is another way Cozart was trying to prevent the plaintiffs' attorney from obtaining a copy of the HomeTech report.

a "'showing of an intent to induce the creditor to rely and act on the misrepresentations in question.'"  *Moen*, 238 B.R. at 791 (quoting *In re Swan*, 156 B.R. 618, 623 n.6 (Bankr. D. Min. 1993)).  An intent to deceive can be inferred when a debtor makes a false representation, such as Cozart's representations set out above, with the knowledge that the representation will induce the creditor to act.  *Id.*

The Court finds that this element has been met with regard to the three false representations noted above.  Cozart knew or should have known that Brown/Cushman would rely on the Sellers Property Disclosure.  His failure to amend the disclosure after receiving the HomeTech report is some evidence of his intent to induce Brown/Cushman to purchase the residence.  Further, when asked about the HomeTech report, Cozart responded in the Inspection, Repair and Survey Addendum that the inspection report "was not a full house inspection and was done as part of the construction process."  This misrepresentation of the HomeTech report is further evidence of Cozart's intent to induce Brown/Cushman to purchase the residence because the report is clearly a full house inspection.  Although Cozart stated the inspection was part of Cozart's construction process, the inspection was performed--and the report was provided to Cozart--within one month of the purchase contract and within two months of Brown/Cushman's request for the report.  The mischaracterization of the report and Cozart's attempt to hide the report adversely reflects on Cozart relating to his intention for Brown/Cushman to purchase the residence.  Finally, Cozart's silence regarding the defects reported in the HomeTech report further illuminates the intent element under § 523(a)(2)(A).  Cozart knew that if he disclosed the defects (either by amending the Sellers Property Disclosure, providing a copy of the HomeTech report, or discussing the defects with Brown/Cushman), the sale may have been delayed or cancelled.  His silence is additional evidence of his intent to induce Brown/Cushman to purchase the residence.

### Reliance

To satisfy the fourth element, Brown/Cushman need to prove they justifiably relied on the representations of Cozart.  Justifiable reliance requires that a creditor "act

appropriately according to his individual circumstances." *City Bank & Trust Co. v. Vann* (*In re Vann*), 67 F.3d 277, 284 (11th Cir. 1995). The Supreme Court, in holding that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance quoted Prosser's Law of Torts:

> "[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."

*Field v. Mans*, 516 U.S. 59, 71 (1995)(quoting W. Prosser, Law of Torts § 108, p. 718 (4th ed. 1971)). Under this standard, a creditor's conduct is gauged by the creditor's own capacity and knowledge. The inquiry is necessarily fact intensive because justification "'is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" *Id*. (quoting Restatement (Second) of Torts § 545A cmt. b (1976)). In *Field*, the Court used the Restatement (Second) of Torts to explain that a creditor may not blindly rely on misrepresentations, the falsity of which would be patent had the creditor undertaken a cursory examination or investigation. *Id.* (citing Restatement (Second) of Torts § 541 cmt. a (1976)).

Prior to closing, Brown/Cushman should have been aware that Cozart was perhaps not as proficient a builder as he claimed. This was corroborated by Brown/Cushman's Amerispec report showing several deficiencies. Despite Cozart being unwilling to provide them with the HomeTech report, and Brown/Cushman being placed on notice of the deficiencies reflected by their own inspection report, Brown/Cushman elected to proceed with the closing.

Mr. Brown is an attorney who was formerly employed by Wal-Mart and engaged in what might generally be referred to as business law on behalf of Wal-Mart. According to Mr. Brown, this was the third home he had purchased. Prior to closing, Brown/Cushman hired Amerispec to inspect the subject property. As a result of that inspection, Brown/Cushman were put on notice of each of the false representations by Cozart. The

11

Amerispec inspector advised Brown/Cushman of the previous inspection, and disclosed several deficiencies needing various corrections and repairs. On July 21, 2006, after the inspection, Brown/Cushman requested that Cozart complete all of the deficient items on the Amerispec report and provide them a copy of the HomeTech inspection report. Cozart responded that he would not provide the previous inspection and addressed a number of the listed deficiencies. The next day, on July 25, Brown/Cushman responded by stating they do not agree to Cozart's response. However, knowing that (1) the Sellers Property Disclosure was not accurate, (2) their own inspection report disclosed deficiencies in the subject property, (3) there was another recent inspection report in Cozart's possession that he would not provide to them, and (4) they did not agree with Cozart's response to their requests, Brown/Cushman elected to proceed with the closing. Because of this, the Court cannot find that Brown/Cushman justifiably relied on the representations of Cozart. Accordingly, the fourth element has not been met.

### Damages

The last required element of proof to find the debt nondischargeable under § 523(a)(2)(A) is for Brown/Cushman to have sustained the alleged damages as the proximate result of the representations having been made. As a preliminary matter, because the Court finds that Brown/Cushman did not justifiably rely on Cozart's false representations, and proceeded to close the sale of the residence despite having received their own inspection report that disclosed the alleged deficiencies, the Court cannot find Brown/Cushman sustained any loss as the proximate result of the representations having been made. However, had the Court found otherwise with regard to the fourth element, Brown/Cushman would still not be entitled to a favorable determination because they failed to prove with specificity what damages, if any, resulted from the false representations of Cozart.

Brown/Cushman contend that they are entitled to the "liquidated amount" reflected in the settlement agreement in the amount of $545,595.00. However, the liquidated sum in the parties' agreement does not address the specific cost of repairs that might be necessitated

from the misrepresentations of Cozart. A review of the two inspection reports indicates that some of the alleged defects are *de minimis*, such as the absence of a door striker plate or the necessity to trim doors so they do not drag on the carpet. Additionally, some of the defects that needed repair according to the HomeTech report were repaired or otherwise resolved prior to closing as reflected in the Amerispec report. However, if some deficiencies were material and not repaired, those deficiencies were waived by Brown/Cushman when the purchase was concluded. Finally, even if there were material, latent defects known to Cozart and not disclosed or remediated, or referred to in the Amerispec report, there is simply no proof as to the cost to repair or remediate those defects.

At the conclusion of trial, after both parties had rested, the Court invited Mr. Brown to be recalled to clarify earlier testimony regarding evidence of damages. Mr. Brown had earlier testified that he had received estimates of "over $400,000.00" to repair the house. The Court initially sustained Cozart's objection to this testimony. Mr. Brown was permitted to be recalled to provide a nexus between the actual damages Brown/Cushman allegedly suffered and the settlement agreement entered into by the parties. After naming the specific people or companies that inspected the house to determine damages, Mr. Brown testified that his "ballpark estimate" of the damage was $450,000.00. Brown/Cushman offered no further evidence of the alleged damages with, for instance, expert testimony, repair estimates, or invoices. Counsel for Brown/Cushman made it clear to the Court that the damage estimate was offered to support the amount of the settlement agreement, which reflects the damages for which Brown/Cushman are asking. There is no proximate relation between any specific representation made and either the ballpark estimate amount of $450,000.00 or the settlement agreement amount of $545,595.00.

On the contrary, the settlement agreement does not represent the damages allegedly suffered by Brown/Cushman. Although the damages may have been reflected in the agreement and agreed to by the parties as liquidated damages, there is no proof before the

Court as to actual specific damages proximately resulting from Cozart's misrepresentations. The settlement agreement was a contract between Brown/Cushman and Cozart, and the contract was breached; breach of contract is not, in itself, actionable under § 523(a)(2)(A). However, if fraud was established with regard to the *initial* debt for money, property, or services to the extent the debt was obtained by false pretenses, false representation, or actual fraud, the Court can look beyond the settlement agreement to determine the amount of damages incurred. *Archer v. Warner*, 538 U.S. 314 (2003)(holding that a settlement reducing a claim for fraud into a monetary obligation can be excepted from discharge under § 523(a)(2)(A)). Here, even if fraud had been established, no evidence was presented beyond the settlement agreement from which the Court could determine actual damages.

In this instance, Brown/Cushman argue that the amount of damages is the amount set forth in the settlement agreement. The Court disagrees. The settlement agreement is merely a memorialization of an understanding the parties had in state court; this Court must decide "whether that same debt can *also* amount to a debt for *money obtained by fraud*, within the terms of the nondischargeability statute." *Id.* at 319. And in order to make that determination, there must be proof by a preponderance of the evidence of each of the five elements. There is no proof before the Court of actual damages incurred by Brown/Cushman (besides the amount listed in the settlement agreement). Accordingly, the Court must find that the fifth element has not been met.

### Conclusion

For the reasons stated above, the Court denies the complaint of Brown/Cushman. In his answer to the plaintiffs' complaint, Cozart has prayed that his attorney fees and costs be awarded pursuant to § 523(d). The Court denies the request. Based upon the findings of fact in this case, particularly Cozart's misrepresentations, the Court finds that special circumstances exist that would make an award of attorney fees and costs unjust.

14

Finally, Brown/Cushman's prayer for Modification of Stay is denied as moot as it relates to the debtor, Don Cozart. A modification of the automatic stay would be dependent upon the Court having concluded that at least some portion of the debt was non-dischargeable. The Court makes no finding with regard to the entry of a judgment in state court by Brown/Cushman against Covington Custom Homes.

IT IS SO ORDERED.

May 5, 2009
DATE

BEN T. BARRY
UNITED STATES BANKRUPTCY JUDGE

cc: Jason Bramlett, attorney for Arthur Brown and Catherine Cushman
    Jason Wales, attorney for Arthur Brown and Catherine Cushman
    Stanley Bond, attorney for Don Bryce Cozart
    Branch Fields, attorney for Don Bryce Cozart

EOD 5/5/2009
by L Schacherbauer